IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

TALBERT F. DEHAVEN, II,

        Plaintiff,

v.                            CIVIL ACTION NO.  2:14-cv-16156

WEST VIRGINIA DIVISION
OF CORRECTIONS, et al.,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

      Pending before the court are the Defendants West Virginia Division of Corrections, James Rubenstein, and David Ballard's Motion to Dismiss [Docket 2] and Defendants Corp. Michael Blagg, Sgt. Thomas Bennett, C.O. Jeremy Arbogast, C.O. David Lutrell, and C.O. John Doe's Motion to Dismiss [Docket 5]. For the reasons stated below, the motion by the West Virginia Division of Corrections, Rubenstein, and Ballard [Docket 2] is **GRANTED in part** and **DENIED in part**. Count III is **DISMISSED** and the West Virginia Division of Corrections is **DISMISSED** from this case. Additionally, the motion by Blagg, Bennett, Arbogast, Lutrell, and Doe [Docket 5] is **DENIED**.

  **I. Background**

      The plaintiff, a parole offender previously convicted of forgery and uttering, alleges he was violently assaulted by a fellow inmate, Christopher Cox, while incarcerated at Mount Olive Correctional Complex ("Mount Olive"). According to the Complaint, the plaintiff was directed to

perform janitorial services and clean the showers in Pod-5 of the Quilliams II unit, the maximum security unit at Mount Olive. Upon entering Pod-5, the inmates housed therein screamed threats toward the plaintiff, accused him of being a snitch, and kicked the doors of their cells. (Compl. [Docket 1-2], at 2-3). Inmate Cox, a convicted murderer who was housed in Pod-5, repeatedly threw his body into his cell door until it broke, allowing him to escape and attack the plaintiff. (*Id.* at 3). The plaintiff alleges that defendant Michael Blagg, the nightshift supervisor of the Quilliams II unit, witnessed Cox ramming his cell door but did not intervene or attempt to prevent Cox from exiting his cell. (*See id.*).

Cox punched and kicked the plaintiff and struck him with a wooden push broom. During the attack, other Pod-5 inmates screamed and kicked their cell doors, imploring Cox to kill the plaintiff. (*Id.*). The plaintiff reached the Pod-5 locked door during the attack, where he witnessed "a number of correctional officers," including defendants Jeremy Arbogast and David Lutrell, standing on the other side of the door observing the attack. (*Id.* at 4). The plaintiff contends that he pleaded with these officers to open the door, but that the officers refused to open the door or otherwise intervene to stop the attack. (*See id.*). Cox then broke the handle off of the wooden broom, producing a jagged point with which he stabbed the plaintiff in his side. (*Id.*).

The correctional officers, including the defendants, "eventually and after an unreasonable lapse of time" attempted unsuccessfully to stop the attack from outside the Pod-5 door. (*Id.*). Only after Cox ceased his attack did the officers enter the room and subdue Cox. (*Id.*). The plaintiff's injuries required treatment at a hospital. The plaintiff alleges he suffered a permanent loss of vision in his right eye as well as permanent "psychological damage." (*Id.*).

The Complaint notes that, in a report authored by Mount Olive Sergeant Jeffrey Hilewitz after the assault, Cox admitted that he warned the nightshift at Pod-5 prior to the assault that

"something was going to happen. He (DeHaven) told me that I was on single rec, and behind a locked door." (*Id.* at 5).

The plaintiff brings four separate claims: Counts I and II against defendants Blagg, Bennett, Arbogast, Lutrell, and John Doe in their individual capacities for failing to prevent Cox's attack on the plaintiff and for failing to reasonably intervene to stop the attack in contravention of the Eighth Amendment of the United States Constitution, Count III against the West Virginia Division of Corrections for negligence, and Count IV against defendants Rubenstein and Ballard in their individual capacities for failing to provide adequate training and supervision.

## II. Legal Standard

A motion to dismiss filed under Rule 12(b)(6) tests the legal sufficiency of a complaint or pleading. *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). Federal Rule of Civil Procedure 8 requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). As the Supreme Court stated in *Ashcroft v. Iqbal*, that standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986) for the proposition that "on a motion to dismiss, courts 'are not bound to accept as true a legal conclusion couched as a factual allegation'"). A court cannot accept as true legal conclusions in a complaint that merely recite the elements of a cause of action supported by conclusory statements. *Iqbal*, 556 U.S. at 677-78. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570). To achieve facial plausibility, the plaintiff must plead facts that allow the court to draw the reasonable inference that the defendant is liable, and those facts must be more than merely consistent with the defendant's liability to raise the claim from merely possible to probable. *Id.*

### III. Motion by Michael Blagg, Thomas Bennett, Jeremy Arbogast, David Lutrell, and John Doe [Docket 5]

Defendants Blagg, Bennett, Arbogast, Lutrell, and Doe argue that the plaintiff has failed to state a claim for deliberate indifference under the Eighth Amendment. To state a claim for deliberate indifference, a plaintiff must show that a prison official "[knew] of and disregard[ed] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Prison officials may be liable for deliberate indifference under the Eighth Amendment "where the government is accused of failing to protect a detainee from a substantial risk of physical harm[.]" *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 302 (4th Cir. 2004).

The defendants argue that the Complaint fails to allege any facts from which the inference could be drawn that the defendants were aware of the risk that Cox would escape from his cell and attack the plaintiff. Further, the defendants argue that the Complaint fails to allege that the defendants actually drew such an inference. The defendants' argument is meritless. The Complaint adequately alleges facts showing that the defendants were aware that the plaintiff was at a serious risk of being attacked. The Complaint states that the inmates in Pod-5 screamed and threatened the plaintiff and kicked the doors of their cells when the plaintiff entered the area. (*See* Compl. [Docket 1-2], at 2-3). The Complaint further states that defendant Blagg witnessed Cox throwing

his body into his cell door in an attempt to break the door. (*Id.* at 3). Further, the Complaint alleges that defendants Arbogast, Lutrell, Blagg, Bennett, and another officer stood by outside the Pod-5 door as Cox continued beating the plaintiff. (*Id.* at 4). Finally, the Complaint states that Cox warned the nightshift officers that "something was going to happen." (*Id.* at 5).

Accepting these facts as true, as I am required to do at this stage, it is clear that the plaintiff was at a serious risk of harm in Pod-5 and that the defendants knew of this risk. Accordingly, the defendants' motion to dismiss the deliberate indifference claims is **DENIED**.

### IV. Motion by West Virginia Division of Corrections, James Rubenstein, and David Ballard [Docket 2]

First, defendant West Virginia Division of Corrections argues that it cannot be held liable for negligence in Count III because it is entitled to immunity. The plaintiff does not refute this argument and voluntarily withdraws Count III. Accordingly, the motion to dismiss Count III is **GRANTED**. As Count III is the sole claim lodged against the West Virginia Division of Corrections, it is **DISMISSED** from this lawsuit.

Second, defendants Rubenstein and Ballard argue that Count IV should be dismissed for failure to state a claim. It is not entirely clear from the Complaint or the plaintiff's briefing whether Count IV is a federal claim for supervisory liability, or a state law claim for negligent supervision and training. The plaintiff appears to want it both ways. His briefing confusingly states that Count IV is a federal supervisory liability claim brought pursuant to 42 U.S.C. § 1983 (*see* Pl.'s Resp. to Defs. W. Va. Division of Corrections, James Rubenstein and David Ballard's Mot. to Dismiss [Docket 14], at 4), while at the same time arguing that it is a claim for "negligent supervision and training," which is a state law claim (*see id.* at 7). In light of this confusion, I will analyze whether

Count IV sufficiently states either a federal supervisory liability claim or a state law negligence claim.

Assuming Count IV is a federal supervisory liability claim, the defendants argue that the plaintiff fails to allege a pattern of constitutional violations or that defendants Rubenstein or Ballard were on notice of constitutional violations by their employees. To impose liability under 42 U.S.C. § 1983 for failure to train subordinates, a plaintiff must allege more than mere *respondeat superior* liability. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 388-89 (1989); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Instead, the plaintiff must show that the supervisor's failure to train amounted to "deliberate indifference" to the plaintiff's rights. *Harris*, 489 U.S. at 388. Deliberate indifference "is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 131 S. Ct. 1350, 1360 (2011).

Deliberate indifference for purposes of failure to train can be shown in one of two ways. First, a plaintiff may point to a pattern of constitutional violations by employees to demonstrate deliberate indifference on the part of the supervisors. *Id.* Second, a supervisor may be liable for a single, isolated incident where the need for training with respect to the subordinate's conduct was "plainly obvious." *Doe v. Broderick*, 225 F.3d 440, 456 (4th Cir. 2000); *see also Spell v. McDaniel*, 824 F.2d 1380, 1390 (4th Cir. 1987) ("[T]raining policy deficiencies for which municipal liability may be imposed include not only express authorizations of specific unconstitutional conduct, but tacit authorizations, *and failures adequately to prohibit or discourage readily foreseeable conduct in light of known exigencies of police duty*.") (emphasis added); *Brown v. Mitchell*, 308 F. Supp. 2d 682, 704-06 (E.D. Va. 2004) (supervisory liability for failure to train appropriate where "policymakers were aware of, and acquiesced in, a pattern of

constitutional violations" by subordinates and also for "singular deprivations of more obvious rights") (quoting *Harris*, 489 U.S. at 397). The Supreme Court has explained that a need for training may be so obvious that a supervisor's failure to provide it will result in § 1983 liability:

> [I]t may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the [supervisor] can reasonably be said to have been deliberately indifferent to the need. In that event, the failure to provide proper training may fairly be said to represent a policy for which the [supervisor] is responsible, and for which the [supervisor] may be held liable if it actually causes injury.

*Harris*, 489 U.S. at 390.

There is no question that the Complaint fails to allege a pattern of constitutional violations by subordinate officers at Mount Olive. Therefore, the only way the plaintiff can state a supervisory liability claim is if the plaintiff alleges that defendants Rubenstein and Ballard failed to train their officers "concerning a clear constitutional duty implicated in recurrent situations that a particular [officer] is certain to face." *Brown v. Mitchell*, 308 F. Supp. 2d 682, 704 (E.D. Va. 2004) (citing *Harris*, 489 U.S. at 390). As I have previously explained, the Complaint alleges that subordinate officers failed to prevent the plaintiff from being attacked by inmate Cox and that they failed to reasonably intervene to stop the attack once it began. The need for training to avoid and halt violence by fellow inmates is clearly obvious for correctional officers in a prison environment, especially correctional officers overseeing a maximum security section of a prison. The Complaint contends that defendants Rubenstein and Ballard failed to adequately train their correctional officers to protect the known and substantial risk of harm by other inmates. (*See* Compl. [Docket 1-2], at 9). Therefore, the Complaint adequately states a claim for supervisory liability for failure to train under § 1983. Accordingly, to the extent the defendants' motion is addressed to the federal supervisory liability theory of Count IV, it is **DENIED**.

To the extent that Count IV can be characterized as a state law negligent supervision and training claim, it clearly fails. "In the absence of an insurance contract waiving the defense, the doctrine of qualified or official immunity bars a claim of mere negligence . . . against an officer . . . acting within the scope of his or her employment, with respect to the discretionary judgments, decisions, and actions of the officer." Syl. Pt. 7, *Jarvis v. W. Va. State Police*, 711 S.E.2d 542, 544 (W. Va. 2010) (citing Syl. Pt. 6, *Clark v. Dunn*, 465 S.E.2d 374 (W. Va. 1995)). The plaintiff makes no attempt to argue why this type of official immunity should not apply here. In any event, there are no allegations that Rubenstein and Ballard were acting outside the scope of their employment. Therefore, to the extent the defendants' motion is addressed to the state law negligent supervision and training theory of Count IV, it is **GRANTED**.

## V. Conclusion

For the reasons stated above, the motion by West Virginia Division of Corrections, Rubenstein, and Ballard [Docket 2] is **GRANTED in part** and **DENIED in part**. Count III is **DISMISSED** and the West Virginia Division of Corrections is **DISMISSED** from this case. Additionally, the motion by Blagg, Bennett, Arbogast, Lutrell, and Doe [Docket 5] is **DENIED**.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: June 18, 2014

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE